1

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT FOR THE**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9  **GLAFIRO GONZALEZ,**              )    **No. CV-F-09-977 OWW**
                                      )    **(No. CR-F-03-5165 OWW)**
10                                    )
                                      )    **MEMORANDUM DECISION AND**
11              **Petitioner,**       )    **ORDER DENYING PETITIONER'S**
                                      )    **MOTION TO VACATE, SET ASIDE**
12          **vs.**                   )    **OR CORRECT SENTENCE PURSUANT**
                                      )    **TO 28 U.S.C. § 2255 AND**
13                                    )    **DIRECTING CLERK OF THE COURT**
   **UNITED STATES OF AMERICA,**      )    **TO ENTER JUDGMENT FOR**
14                                    )    **RESPONDENT**
                                      )
15              **Respondent.**       )
                                      )
16  _____  )

17

18       **On May 31, 2009, pursuant to the "mailbox rule," Petitioner**

19  **Glafiro Gonzalez filed a motion to vacate, set aside or correct**

20  **sentence pursuant to 28 U.S.C. § 2255.**

21       **A.   Background.**

22       **Petitioner, represented by Gary Huss, was convicted by jury**

23  **trial of conspiracy to manufacture and distribute methamphetamine**

24  **and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) &**

25  **(b)(1)(A) and 846(a)(1) and three counts of distribution of**

26  **methamphetamine and aiding and abetting in violation of Section**

1

841(a)(1) and (b)(1)(A).  Petitioner was sentenced to a 300 month concurrent term of imprisonment on each count of conviction and a 96 month term of supervised release.  Petitioner's conviction and sentence were affirmed on appeal, *United States v. Gonzalez,* 2007 WL 1185692 (9th Cir.2007)

    A.  <u>Timeliness of Section 2255 Motion</u>.

    The threshold issue is the timeliness of Petitioner's Section 2255 motion.

    Section 2255 provides that a one-year period of limitation applies to a Section 2255 motion, which limitation period runs from the latest of:

        (1) the date on which the judgment of conviction became final;

        (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

        (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Applicable here in Section 2255(1).

    The one-year limitation period for a federal prisoner commences when the availability of appeal has exhausted and the time for a petition for certiorari has elapsed or a petition for

certiorari finally denied.  *See United States v. Garcia*, 210 F.3d 1058, 1060 (9th Cir.2000), citing *Griffith v. Kentucky*, 479 U.S. 314 (1987).

Petitioner's conviction was affirmed on appeal by judgment filed on April 20, 2007.  The mandate issued on May 14, 2007. Under Supreme Court Rule 30-1, calculation of any period contained in the rules shall exclude the day on which the triggering event occurs and include the last day of the period, unless it is a Saturday, Sunday or legal holiday.  Petitioner's conviction became final 90 days after the mandate issued, i.e., August 13, 2007.  According to the Ninth Circuit docket, Petitioner served a request for leave of court to file a motion for rehearing and suggestion for rehearing en banc on August 24, 2007, which request was docketed on August 30, 2007.  By Order filed on February 4, 2008, Petitioner's request was construed as a motion to recall the mandate and was denied.  On May 6, 2008, Petitioner filed a petition for certiorari in the United States Supreme Court.  The petition for certiorari was denied by the Supreme Court on June 2, 2008.[1]  Petitioner's Section 2255 motion was filed on May 31, 2009.

Petitioner's request to the Ninth Circuit for leave to file a motion for rehearing appears to have been untimely.  Pursuant

---

[1]The Court may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the PACER system via the internet. *See* Fed. R. Evid. Rule 201(b); *United States v. Howard*, 381 F.3d 873, 876, fn.1 (9th Cir. 2004).

1   to Rule 40(a)(1), Federal Rules of Appellate Procedure, "[u]nless

2   the time is shortened or extended by order or local rule, a

3   petition for panel rehearing may be filed within 14 days after

4   entry of judgment."   Supreme Court Rule 13-3 provides:

5               The time to file a petition for a writ of
                certiorari runs from the date of entry of the
6               judgment or order sought to be reviewed, and
                not from the issuance date of the mandate ...
7               But if a petition for rehearing is timely
                filed in the lower court by any party, or if
8               the lower court appropriately entertains an
                untimely petition for rehearing or sua sponte
9               considers rehearing, the time to file the
                petition for a writ of certiorari for all
10              parties ... runs from the date of the denial
                of rehearing or, if rehearing is granted, the
11              subsequent entry of judgment.

12  Unless considered by the Court of Appeals, an untimely petition

13  for rehearing does not toll the time within which to file a

14  petition for writ of certiorari.  *See United States v. Close*, 336

15  F.3d 1283, 1285-1286 (11th Cir.2003); *United States v. Wall*, 456

16  F.3d 316, 318-320 (3rd Cir.2004); *United States v. Dass*, 2006 WL

17  2045873 (N.D.Okla.2006).  Here, it appears that Petitioner's

18  conviction was final for purposes of the one-year limitation

19  period before he served his motion for leave to file a petition

20  for rehearing on August 24, 2007 and that his Section 2255 motion

21  is untimely.

22          Even if Petitioner's Section 2255 motion is untimely,

23  Petitioner is not entitled to relief.

24          Petitioner contends that he is entitled to relief because:

25  (1) he was improperly sentenced under 21 U.S.C. § 841(b)(1)(A)

26  for manufacture of methamphetamine, a Schedule II controlled

4

substance, and should have been sentenced pursuant to 21 U.S.C. § 841(b)(1)(D), for a Schedule III controlled substance; (2) the 300 month sentence is illegal pursuant to *Edwards v. United States,* 523 U.S. 511 (1998); (3) his prior conviction by jury trial in the Tulare County Superior Court, Case No. 99-41887, on July 15, 1999, of transporting a controlled substance in violation of California Health & Safety Code § 11379(a), with a special allegation prohibiting probation for excess weight of methamphetamine, does not qualify as a prior predicate controlled substance offense for purposes of U.S.S.G. § 4B1.1 or for a mandatory term of imprisonment pursuant to 21 U.S.C. § 851; (4) Petitioner was not a member of the conspiracy, but was in a buyer-seller relationship; and (5) Petitioner was denied the effective assistance of trial and appellate counsel:

> [N]o reasonable attorney would have failed to research would have failed to have researched the facts and law of the case and failed to have argued these positions to success at trial and on Direct Appeal.  It was not reasonable trial strategy when Counsel informed Petitioner that he 'Saw holes in the Government's case ... so let's take it to trial' in the face of overwhelming evidence against his client.  No reasonable attorney would have advised his client, after the jury returned a guilty verdict, to admit guilt to the probation officer preparing his pre-sentence report stating: 'If you do admit guilt to the probation officer you will still receive a three-point reduction in offense level for acceptance of responsibility.' That is legally impossible.

"If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must

demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error." *United States v. Jackson*, 988 F.2d 941, 945 (9th Cir.1993). Generally, to demonstrate "cause" for procedural default, a petitioner must show that "some objective factor external to the defense" impeded his adherence to the procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, if the record shows that an appellate counsel's performance fell below the standard of competency of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), or that he was denied representation by counsel on appeal altogether, he has demonstrated cause for his procedural default. *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir.2003).

In *Skurdal*, the Ninth Circuit addressed Skurdal's contention that his counsel Bevolden's failure to file a proper *Anders* brief with his motion to withdraw constituted ineffective assistance of appellate counsel. Bevolden filed a timely notice of appeal on Skurdal's behalf on November 6, 1991. He did not file an opening brief. Instead, he filed a motion on June 19, 1992 requesting permission to withdraw as Skurdal's attorney. In his motion to withdraw, Bevolden stated that "to the extent he understands Skurdal's issues, [he could not] in good faith, nor in compliance with Rule 3.1 of the Rules of Professional Conduct, assert those issues on appeal for the reasons that Curtis L. Bevolden believes those issues to be frivolous." Bevolden also filed a three-page affidavit in which he outlined the history of his relationship

with Skurdal.  Bevolden explained that "Skurdal was allowed to
proceed pro se or pro per for a time but when Skurdal insisted on
proceeding with his unique legal philosophy the District Court
re-appointed Curtis L. Bevolden as his counsel."  Bevolden did
not notify the Ninth Circuit in his motion to withdraw as
Skurdal's counsel on his direct appeal, or in the supporting
affidavit, that the district court had found that Skurdal lacked
the capacity to make a knowing and intelligent waiver of counsel.
Further, Bevolden did not submit a brief that complied with the
requirements set forth in *Anders v. California*, 386 U.S. 738
(1967).  On September 18, 1992, the Ninth Circuit issued a one-
paragraph order which granted Bevolden's motion to withdraw as
Skurdal's counsel and advised Skurdal that he had twenty-one days
to inform the court whether he desired to proceed pro se on
appeal or to have new counsel appointed to represent him.
Skurdal filed a motion to proceed in propria persona.  The clerk
of the court issued an order stating that Skurdal had informed
the court that he intends to represent himself.  Before granting
Skurdal's motion to proceed pro se in prosecuting the appeal, the
Ninth Circuit made no inquiry to determine whether Skurdal's
waiver of appellate counsel was knowing and intelligent.  In an
unpublished memorandum, the Ninth Circuit affirmed Skurdal's
conviction.  341 F.3d at 924.  Skurdal then filed a Section 2255
motion, which the District Court denied, holding that all of the
issues were procedurally barred because he had failed to raise
them on direct appeal and had not demonstrated cause and

prejudice.   The Ninth Circuit reversed the District Court, holding:

> [T]he procedure an attorney must follow in order to withdraw from representing an indigent defendant convicted in federal court, because counsel believes the appeal is wholly without merit, is governed by *Anders* and the law of this Circuit.   In this Circuit, we require an attorney who wishes to withdraw from representing a person on appeal to follow the procedures outlined in *Anders*, 386 U.S. at 744 ..., *United States v. Griffy*, 895 F.2d 561, 562 (9th Cir.1990)(per curiam) ....
>
> In order '"to provide the appellate courts with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeal to the best of their ability,"' ..., we held in *Griffy* that 'appointed counsel who concludes after a conscientious review of the record that the appeal is wholly without merit ... must "so advise the court and request permission to withdraw."' *Griffy*, 895 F.2d at 562 ... Defendant's counsel must also, however, 'submit a brief on behalf of the indigent defendant presenting the strongest arguments in favor of [his or her] client supported by citations to the record and to applicable legal authority." *Id.* at 563.   If appellate counsel fails to comply with the requirements of *Griffy* and *Anders,* he or she has 'deprived the court of the assistance of an advocate in its own review of the cold record on appeal.' *Penson*, 488 U.S. at 82 ... If an attorney fails to give any assistance to his client, he has not provided effective assistance of counsel.

*Id.* at 928-929.

     The Ninth Circuit's docket for Petitioner's appeal establishes that Mr. Huss filed an *Anders* brief.   The *Anders* brief is reported at 2007 WL 4864581 (9th Cir.).   After describing the proceedings in the District Court and setting

forth the facts supporting Petitioner's conviction, the brief
states:

> Pursuant to the opinion of the Supreme Court
> in *Anders v. California*, 386 U.S. 738 (1967),
> counsel requests that this court
> independently review the entire record on
> appeal in this case.  Appellant has been
> advised by present counsel of his right to
> file a supplemental brief in this court
> within thirty days of the date this brief is
> filed.  Appellant has been advised that in
> the supplemental brief he may bring to the
> court's attention any issues he believes
> deserve review.  Appellant has further been
> advised that he may ask the court to relieve
> present counsel, that present counsel will
> forward appellant's copy of the record on
> appeal for the purpose of preparing a
> supplemental opening brief, upon his request,
> but that counsel will retain the record for
> the present time to allow proper
> representation in the event the court
> requests further briefing.
>
> Based on the above, it appears that appellant
> has no nonfrivolous issue on appeal, and
> counsel for the Appellant hereby requests
> permission to withdraw.  (*Anders v.
> California*, 386 U.S. 738 (1967)).
>
> Present counsel has reviewed the entire
> record, and remains available to brief any
> additional issues, upon the court's request.

On March 7, 2006, the following Order was docketed:

> Filed Order (STAFF: EK) The brf of Gary L.
> Huss, Esq., to w/d as csl of record under
> Anders v. CA, (cite), is referred to the pnl
> assigned to hear the merits of this appeal.
> Csl is reminded that our rules require a
> separate mtn to w/d. W/in 14 days of the
> filing date of this order, Mr. Huss shall
> file the mtn as required.  The pnl will
> conduct an independent review of the record.
> (cite) After it conducts its review, the
> merits pnl will determine whether csl may be
> allowed to w/d and whether new csl will be
> appt'd.  The excerpts of record filed 1/6/06

> do not contain a RT of the voir dire hearing.
> W/in 14 days of the filing date of this
> order, Mr. Huss shall also file five copies
> of supp'l excerpts of record, which include
> complete RT of the voir dire hearing.  Aplt
> may file a pro se supp'l opening brf raising
> any issues ....

Mr. Huss filed a motion to withdraw as counsel and Petitioner filed a supplemental opening brief as required.  Copies of Mr. Huss's motion to withdraw or Petitioner's supplemental opening brief are not available through PACER or Westlaw.  On April 20, 2007, the Ninth Circuit issued a Memorandum granting Mr. Huss's motion to withdraw and affirming Petitioner's conviction:

> Glafiro Gonzalez appeals from his jury-trial
> conviction and 300-month sentence for aiding
> and abetting, conspiracy and distribution of
> methamphetamine ... Pursuant to *Anders v.*
> *California* ..., Gonzalez's counsel has filed
> a brief stating that he finds no meritorious
> issues for review, along with a motion to
> withdraw as counsel of record.  Appellant has
> filed a pro se supplemental brief.
>
> Our examination of the briefs and our
> independent review of the record pursuant to
> *Penson v. Ohio*, 488 U.S. 75, 83-84 ...
> (1988), disclose no arguable issues for
> review on direct appeal.

This record establishes that Mr. Huss complied with the requirements of *Anders* and *Griffy*.  Mr. Huss filed an *Anders* brief and then moved to withdraw as counsel; Petitioner was given leave and did file a pro se supplemental brief.  Petitioner has not demonstrated cause for his procedural default to raise the claims asserted in his Section 2255 motion on direct appeal.

Even if Petitioner had demonstrated cause for his procedural default, Petitioner has not established actual prejudice because

1  the claims which Petitioner contends should have been raised on

2  appeal are without merit.

3      Petitioner contends that he was improperly sentenced under

4  21 U.S.C. § 841(b)(1)(A) for manufacture of methamphetamine, a

5  Schedule II controlled substance.  Petitioner asserts that he

6  should have been sentenced pursuant to 21 U.S.C. § 841(b)(1)(D),

7  for a Schedule III controlled substance.

8      Petitioner's ground for relief is without merit.

9  Methamphetamine in all its forms is properly classified as a

10  Schedule II controlled substance pursuant to 21 C.F.R. §

11  1308.12(d).  As explained in *United States v. Turner*, 2007 187

12  Fed.Appx. 698 (9th Cir.2006):

13           We have held that the Attorney General
             properly rescheduled all forms of
14           methamphetamine to Schedule II, despite
             language in 21 U.S.C. § 812(c) that includes
15           some forms of methamphetamine in Schedule
             III.  *United States v. Kendall,* 887 F.2d 240,
16           241 (9th Cir.1989) (per curiam); *see also
             United States v. Durham,* 941 F.2d 886, 889
17           (9th Cir.1991)(stating that '[t]his court has
             repeatedly concluded, as we have again in
18           this opinion, that methamphetamine has been
             properly designated a Schedule II controlled
19           substance'); *accord United States v. Macedo,*
             406 F.3d 778, 785 (7th Cir.2005)(finding that
20           'the reclassification of methamphetamine as a
             schedule II controlled substance applies to
21           all forms of methamphetamine in accordance
             with 21 C.F.R. § 1308.12(d) despite [21
22           U.S.C. § 812's] distinction'); *United States
             v. Gori*, 324 F.3d 234, 239-40 (3rd
23           Cir.2003)(rejecting the defendant's argument
             that '§ 812's classification of
24           methamphetamine supersedes the subsequent
             regulation').

25      Petitioner's contention that the 300 month sentence imposed

26

is illegal pursuant to *Edwards v. United States*, 523 U.S. 511 (1998), is baseless. Petitioner relies on dicta:

> Of course, petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines. USSG § 5G1.1.

523 U.S. at 515. Here, the statutory maximum for the counts of conviction was life imprisonment.

Petitioner contends that his prior conviction by jury trial in the Tulare County Superior Court, Case No. 99-41887, on July 15, 1999, of transporting a controlled substance in violation of California Health & Safety Code § 11379(a), with a special allegation prohibiting probation for excess weight of methamphetamine, does not qualify as a prior predicate controlled substance offense for purposes of U.S.S.G. § 4B1.1 or for a mandatory term of imprisonment pursuant to 21 U.S.C. § 851.

To determine whether a prior conviction qualifies for an enhancement, the Ninth Circuit applies the *Taylor* modified categorical approach. *United States v. Almazan-Becerra*, 482 F.3d 1085, 1088 (9th Cir.2007); *see also Taylor v. United States*, 495 U.S. 575 (1990). The Ninth Circuit holds that Section 11379(a) of the California Penal Code is overbroad and does not categorically qualify for drug trafficking enhancements. *United States v. Navidad-Marcos*, 367 F.3d 903, 907-908 (9th Cir.2004). The modified categorical approach allows the sentencing court to

perform a "limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive." *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir.2002). Because a conviction of Section 11379(a) does not necessarily qualify for the enhancement, the Court

> must look to the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented' to determine if a prior conviction qualifies for an enhancement. *Shepard v. United States*, 544 U.S. 13, 16 ... (2005). '*Taylor* is clear that any inquiry beyond statute and charging document must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes.' *Id.* at 23 n.4 ... 'The idea of the modified categorical approach is to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime, even if the statute defining the crime is overly inclusive.' *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir.2002) ... 'Charging papers alone are never sufficient.' *Id.*

*Almazon-Becerra*, *id.* In *United States v. Kelly*, 422 F.3d 889, 895 (9th Cir.2005). "To satisfy the modified categorical approach in the case of a jury conviction, the record of conviction must establish that the '"jury was actually required to find all the elements" of the generic crime.'" *Li v. Ashcroft*, 389 F.3d 892, 896 (9th Cir.2004), quoting *Taylor v. United States*, *id.*, at 602.

At sentencing, Respondent submitted a copy of the Abstract of Judgment, various police reports, and a copy of the Report and Recommendation of the Probation Officer.  In *Navidad-Marcos*, *supra,* 367 F.3d at 908-909, the Ninth Circuit held that a District Court may not rely on an abstract of judgment to determine the nature of a prior conviction for purposes of analysis under *Taylor v. United States*.  In *United States v. Lopez-Montanez*, 421 F.3d 926, 932 (9th Cir.2005), the Ninth Circuit ruled:

> The government asserts that the probation report may be used in this case because the trial judge expressly considered and adopted it at the sentencing hearing, and Lopez-Montanez never objected to its accuracy.  The transcript of the plea colloquy hearing, however, does not comport with the government's characterization.  The court simply stated that it read and considered the probation officer's report, but it did not make any explicit factual findings based on the report.  Moreover, the probation report consists of a summary of the Sheriff's Department report, the kind of report the Supreme Court recently concluded was not a judicially noticeable document under the modified categorical approach.  *See Shepard*, 125 S.Ct. at 1257 (holding that a sentencing court cannot look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, the generic crime).

Here, however, Petitioner was convicted by jury trial.  The Probation Report submitted by Respondent expressly states: "[T]he defendant has been convicted of Felony, Section 11379(a) of the Health and Safety Code - Transportation of Methamphetamine with Special Allegations pursuant to Section 1203.073(e)(2) of the

14

Penal Code - Possession of 28.5 Grams or More of Methamphetamine
or 57 Grams or more of a Substance Containing Methamphetamine."
Further, although not presented by Respondent at sentencing,
Petitioner's conviction was affirmed on appeal by the Fifth
Appellate District, Case No. F035017.  The Opinion affirming
Petitioner's conviction states: "A jury convicted appellant
Glafiro Gonzales of methamphetamine (Health & Saf. Code, § 11379,
subd. (a)), and found true an allegation that said offense was a
'violation' of Penal Code section 1203.073, subdivision (b)(2)."

    Petitioner contends that he is entitled to relief because
Petitioner was not a member of the conspiracy, but was in a
buyer-seller relationship. Petitioner refers to statements made
by the Court at sentencing that "Obviously he wasn't in on every
transaction, he wasn't there for everything" as showing that
Petitioner was not a member of the charged conspiracy, but was
only an independent seller.  Petitioner misconstrues the Court's
statements.  They were made in the context of determining whether
Petitioner was a leader or manager of the conspiracy for the
purpose of determining the adjusted offense level under the
Sentencing Guidelines:

> THE COURT: [¶] And the evidence in the case
> did, from the tapes and the testimony of the
> informant, show that Mr. Gonzales Rodriguez
> was at least as active as the others.
> Obviously he wasn't in on every transaction,
> he wasn't there for everything.  But he was
> involved in the Montana dealings and
> certainly it's well supported that the
> greater than three kilos of methamphetamine,
> actual methamphetamine, which could get to a
> base offense level of 38 is more than proved.

15

Here the intended quantity was approximately
100 pounds, according to testimony, back and
forth or 45.36 kilos.

There was an outstanding debt of $60,000.
And I recognize, as Ms. Servatius did say
that some of that was fronted and we're not
talking about cash sales necessarily, but
money was owed.

...

As to role in the offense, the probation
officer has recommended a three level
increase for an aggravating role on the
following basis: That he supervised certain
co-defendants giving directives to and
accompanied by co-defendants involved in the
conspiracy during the drug negotiations and
transactions.  And, candidly, I don't
remember that much directing being done by
Mr. Gonzales-Rodriguez -

MS. SERVATIUS: Your Honor, specifically in
the two transactions that actually took place
under the controlled situation where the
officers were involved, the defendant had
caused David Gonzales' brother Anthony
Rodriguez and both Eddie Rodriguez to assist
him in two of the transactions at different
times.

In addition to that, he had individuals go up
to the informant, they testified, that Olga
Guerrero, who was the defendant's aunt and
another guy named Big David were going up to
Montana to collect the money on behalf of the
defendants.

So there were five individuals the defendant
had working for him in attempting to conduct
the drug transaction both in Montana and the
ones that took place here in Porterville.

THE COURT: And what's you view of the
evidence, Mr. Huss?

MR. HUSS: Well, certainly there's an
inference of active involvement.  But I
didn't hear any evidence during the trial
that I felt established a lot of direction on

16

his part.  There was a lot of inference and
things were - I think it was more inference
and his role - it was - the best that I can
say is simply that I just didn't see much
evidence showing an ongoing active directing
of others.  There was a role that he played.

THE COURT: Yes.

MR. HUSS: But certainly -

THE COURT: You know, in looking at the
conspiracy, it was the Felix family.  And I
didn't view Mr. Gonzales-Rodriguez as being,
quite frankly, in the upper echelon of the
bosses, if you will.  He was definitely an
active participant.  He's definitely doing
things.  I don't know if you would call him
an enforcer with regard to the collection of
that money or not.  He's an active
participant.  There's no question about that.
But I mean, I didn't see him, quite frankly,
as a boss.  And maybe I'm insulting him by
saying that he wasn't a leader.

...

MS. SERVATIUS: I think that in the sentencing
guidelines, they take into account those that
are organizers and leaders and those that are
managers.

THE COURT: Yes.

MS. SERVATIUS: And in this case the defendant
is a leader when he recruits the efforts of
other individuals, which he did when he
ordered David Gonzales to deliver drugs on
the latter transaction that was described at
the trial.  It was David Gonzales who
delivered them because the defendant was
afraid he was being surveilled.  But it was
the defendant who negotiated the transaction.
Similarly, one of the very first deals -

THE COURT: True.  And that's active
participation.

MS. SERVATIUS: No, no, Your Honor, that's
direction to other individuals.  I mean,
David Gonzales wasn't a partner with the

17

defendant.  He was a brother with the defendants who was instructed to deliver the goods after having negotiations take place between the defendant.  And during some of the reported phone calls that were talked about, David, when he - when he - when the conversations I used with David Gonzales, David would refer the informant back to Glafiro Gonzales to make the transaction because he didn't have the authority to do it.

And although Glafiro Gonzales obtained his drugs from the Felix family, he had a separate source of drugs indicating that he didn't work for the Felix family.  He did business with the Felix family.  So he's not an individual who is actually working for Parjedes Felix, Sr., Jr. or Jose Felix.  He was a customer of theirs that had his own business and organization.

THE COURT: He was independent?

MS. SERVATIUS: Yes, Your Honor.  That's what the evidence demonstrates.

MR. HUSS: I think what we're getting into is inferences and conclusions the government chooses to draw from what we actually heard.

MS. SERVATIUS: I think I presented the facts of what was actually stated.  The defendant negotiated a drug deal and he sends David Gonzales to deliver it.  The phone call indicates that David is not in charge of the drugs because he won't negotiate the price of them and he won't negotiate the quantity.  Those are facts.  And then you take those facts and you apply the law and the law says that if the defendant controls the actions of other individuals.

THE COURT: All right.  I'm going to find that he's a leader, but to the extent of two levels; I'm not going to give him the three levels that is recommended by the probation officer.  Especially if he was independent.  I recognize that there were 17 people in the overall conspiracy but if the government's theory is that Mr. Gonzales-Rodriguez was to

18

1    that extent independent, I think that's
     consistent with the two level increase.
2
3   The evidence sufficiently supported Petitioner's involvement in

    the criminal conspiracy.
4
5        Petitioner further contends he was denied the effective

    assistance of trial and appellate counsel.
6
7        To establish an ineffective assistance of counsel claim,

    Petitioner must show: (1) the representation was deficient,
8
    falling "below an objective standard of reasonableness"; and (2)
9
    the deficient performance prejudiced the defense.  *Strickland v.*
10
    *Washington*, 466 U.S. 668, 687 (1984).  The Court need not
11
    evaluate both prongs of the *Strickland* test if the petitioner
12
    fails to establish one or the other.  *Strickland*, *id.* at 697;
13
    *Thomas v. Borg*, 159 F.3d 1147, 1152 (9th Cir.1998), *cert. denied*,
14
    526 U.S. 1055 (1999).
15
         Under the first prong, Petitioner must show that "counsel
16
    made errors so serious that counsel was not functioning as the
17
    'counsel' guaranteed the defendant by the Sixth Amendment."
18
    *Strickland*, 466 U.S. at 687.  "A convicted defendant making a
19
    claim of ineffective assistance must identify the acts or
20
    omissions of counsel that are alleged not to have been the result
21
    of reasonable professional judgment."  *Id.* at 690.  "A fair
22
    assessment of attorney performance requires that every effort be
23
    made to eliminate the distorting effects of hindsight, to
24
    reconstruct the circumstances of counsel's challenged conduct,
25
    and to evaluate the conduct of counsel's performance at the
26

                                   19

time." *Id.* at 689.  The proper inquiry is whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*  The court must apply "a heavy measure of deference to counsel's judgments," and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 690-691.  "The relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir.1988).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989).  A decision to waive an issue where there is little or no likelihood of success and concentrate on other issues is indicative of competence, not ineffectiveness.  *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989).

To meet the prejudice requirement, the petitioner must demonstrate that errors "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693.  "It is [also] not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*  "Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.*  "The defendant must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.

Petitioner contends:

> [N]o reasonable attorney would have failed to research would have failed to have researched the facts and law of the case and failed to have argued these positions to success at trial and on Direct Appeal.  It was not reasonable trial strategy when Counsel informed Petitioner that he 'Saw holes in the Government's case ... so let's take it to trial' in the face of overwhelming evidence against his client.  No reasonable attorney would have advised his client, after the jury returned a guilty verdict, to admit guilt to the probation officer preparing his pre-sentence report stating: 'If you do admit guilt to the probation officer you will still receive a three-point reduction in offense level for acceptance of responsibility.' That is legally impossible.

Petitioner's claim of ineffective assistance of counsel because of counsel's failure to argue that Petitioner was improperly sentenced under 21 U.S.C. § 841(b)(1)(A) for manufacture of methamphetamine, a Schedule II controlled substance, that the 300-month sentence was illegal pursuant to *Edwards v. United States,* that his prior state conviction did not qualify as a prior predicate controlled substance offense for purposes of U.S.S.G. § 4B1.1 or for a mandatory term of imprisonment pursuant to Section 851, and that he was not a member of the conspiracy are baseless.  As concluded *supra,* Petitioner's contentions are without merit.  The failure to raise

a meritless legal argument does not constitute ineffective assistance of counsel.

With regard to Petitioner's contention that counsel was ineffective in advising Petitioner to proceed to trial rather than pleading guilty, Petitioner makes no showing that he was prejudiced by counsel's advice to proceed to trial. Petitioner does not assert that the Government offered him a plea agreement, specify the terms of any such plea agreement, or that he would have accepted the plea agreement if counsel had advised him to do so. Petitioner does not assert that counsel failed to advise him of his right to plead guilty in the absence of a plea agreement. Petitioner makes no showing that his sentence would have been different if he had pleaded guilty. A reduction in the base offense level for acceptance of responsibility is not necessarily foreclosed if a defendant proceeds to trial, nor is such reduction necessarily available if a defendant pleads guilty. U.S.S.G. § 3E1.1, Application Notes 2 and 3. If Petitioner would have been entitled to the § 3E1.1 reduction in base offense level, that reduction would have only been two levels. The Presentence Investigation Report stated a base offense level of 41 and a criminal history score of VI, resulting in a guideline range of 360-life. Petitioner's base offense level was reduced by the Court at sentencing from 41 to 35, which coupled with Petitioner's criminal history score of VI, resulted in a guideline range of 292-365 months. The Court reduced the base offense level to 35 in order to impose a 300 month sentence. If

Petitioner had been entitled to an additional two level decrease because of acceptance of responsibility, his base offense level would have been 33, assuming that the Court would have made the same reduction in the base offense level that it did make to obtain the 300 month sentence.  A base offense level of 33, coupled with Petitioner's criminal history score of VI, results in a guideline range of 235-292 months.  However, counsel could not have known prior to imposition of sentence that the Court would reduce the base offense level from 41 to 35.  If the base offense level had remained at 41, a two level reduction for acceptance of responsibility would have resulted in a base offense level of 39, which when coupled with Petitioner's criminal history category VI, resulted in a guideline range of 360-life.

Petitioner's claim that counsel was ineffective in advising Petitioner to admit guilt to the Probation Officer in order to obtain a reduction in the base offense level for acceptance of responsibility is without merit.  The Presentence Investigation Report states:

> 26.  On March 15, 2005, the defendant was interviewed at the Fresno County Jail in the presence of counsel.  Although the defendant was advised by counsel that he should make a statement regarding the circumstances of the instant offense, the defendant declined to do so.  When asked if he accepts responsibility for his conduct, the defendant responded, 'I don't want to discuss anything that has to do with the case.'  After counsel explained the criteria necessary to obtain a 3-level reduction in offense level for acceptance of responsibility, defendant stated, 'I don't

want to talk about it.'
**Even assuming that counsel's advice was constitutionally deficient, Petitioner cannot demonstrate prejudice to him as a result of that advice. Petitioner did not speak to the Probation Officer about his involvement in the offenses of conviction.**

Petitioner contends: "There was information in the record from which counsel could have and should have discovered arguable issues. Counsel's failure to discover and raise those issues, and then file an ANDERS brief, constitutes gross ineffective assistance of counsel because these issues are meritorious and will drastically affect the amount of time Petitioner spends in prison."

**To the extent Petitioner claims ineffective assistance of appellate counsel because of counsel's failure to argue that Petitioner was improperly sentenced under 21 U.S.C. § 841(b)(1)(A) for manufacture of methamphetamine, a Schedule II controlled substance, that the 300-month sentence was illegal pursuant to *Edwards v. United States,* that his prior state conviction did not qualify as a prior predicate controlled substance offense for purposes of U.S.S.G. § 4B1.1 or for a mandatory term of imprisonment pursuant to Section 851, or that he was not a member of the conspiracy, Petitioner's claim is without merit. *See discussion supra.* The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel. Petitioner does not describe what other arguable issues could have been raised on appeal.**

Petitioner asserts that the Tulare County Superior Court sentenced him on May 24, 2004 in Criminal Case Nos. 41887 and 106105 to a term in state prison and ruled that "[a]ll of his time may be done concurrent to any Federal time that he's presently doing or going to do in Case Number CRF 035165." Petitioner was sentenced in this Court on June 21, 2005. Petitioner complains that he is not receiving "such credits because authorities of the Federal Bureau of Prisons ... refuse to run these two sentences concurrent and they refuse to credit Petitioner's federal sentence with any of the time he spent awaiting trial, during trial and after."  Petitioner contends:

> [I]n the interest of justice, the Court should enter its ORDER that Petitioner's Federal sentence is to run CONCURRENT to the State sentence, and, that he is to be credited with time served from the date of his arrest, June 10, 2004.  In order to achieve the same thing, the Court may prefer to deduct the same amount of time off the end of Petitioner's sentence if that is more expedient.

This claim is not cognizable under Section 2255.  A motion under Section 2255 can test only the legality of the sentence imposed, not the manner of its execution.  *United States v. Giddings*, 740 F.2d 770, 771-772 (9th Cir.1984); *Brown v. United States*, 610 F.2d 672, 677 (9th Cir.1980).  Review of the execution of a sentence may be had through a petition for writ of habeas corpus under 28 U.S.C. § 2241.

A petition for review of the execution of a sentence under Section 2241 must be filed in the District Court for the District

25

in which the petitioner is incarcerated.  Petitioner is incarcerated at USP Atwater.  This Court has jurisdiction to hear any Section 2241 petition filed by Petitioner.  However, the proper respondent to a Section 2241 petition is the custodian/warden of the institution where the federal prisoner is incarcerated.  *See Brittingham v. United States*, 982 F.2d 378 (9th Cir.1992).  Petitioner's Section 2255 motion names the United States as the respondent.  Further, as a judicially created general rule, a federal prisoner challenging the execution of his sentence must first exhaust all administrative remedies.  *See Brown v. Rison*, 895 F.2d 533, 535 (9th Cir.1990), *overruled on other grounds*, *Reno v. Koray*, 515 U.S. 50 (1995).

Because of these requirements, the Court does not address Petitioner's challenges to the execution of his sentence in this Section 2255 proceeding.  Petitioner is required to file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, naming as respondent the warden of USP Atwater, and describing the extent to which, if any, he has exhausted available BOP administrative remedies.

For the reasons stated:

1.  Petitioner Glafiro Gonzalez's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED;

2.  The Clerk of the Court is directed to enter JUDGMENT FOR RESPONDENT and to close this case.

///

///

IT IS SO ORDERED.

**Dated:    July 28, 2009             /s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE