UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GLAFIRO GONZALEZ,<br><br>Defendant. | Case No. 1:03-cr-05165-JLT-6<br><br>ORDER RE: STATEMENT OF NON-OPPOSITION REGARDING RETROACTIVE DESIGNATION<br><br>(Doc. 676) |

## I. INTRODUCTION

On March 9, 2023, Glafiro Gonzalez filed an administrative request with the Bureau of Prisons pursuant to 18 U.S.C. § 3621(b) and BOP Program Statement 5160.05, asking BOP to retroactively designate state prison as a place to serve his current federal sentence. (Doc. 676-1, Ex. A.) Gonzalez also filed a motion in this case asking for the Court to issue a "statement of non-opposition" to his administrative petition. (Doc. 676.) A similar request was denied as premature by U.S. District Judge Dale A. Drozd on February 11, 2020. (Doc. 641.) For the reasons explained herein, though the Court does not affirmatively support the defendant's request that the BOP exercise its authority to *nunc pro tunc* designate a state prison for service of the federal sentence, it offers no opposition to the BOP doing so either.

## II. RELEVANT BACKGROUND

On July 15, 1999, when Gonzalez was 21, a Tulare County jury found him guilty of

felony transportation of a controlled substance (methamphetamine) with a special allegation regarding excess weight of methamphetamine.[1] (Presentence Report (PSR) ¶ 58.) According to the PSR, the transportation charge concerned two pounds of methamphetamine discovered in Gonzalez's vehicle during a traffic stop conducted on March 23, 1999. (PSR ¶ 59.) On January 28, 2000, the state court sentenced Gonzalez to three years in prison. (*See* Doc. 665-1, Ex. I (federal sentencing transcript) at p. 96 of 116). Defendant appealed. (*See id*.) On July 30, 2021, the transportation judgment was affirmed. (PSR ¶ 60.)

In the meanwhile, in March 2003, the government filed the criminal complaint in this federal court matter. (Doc. 1) On April 17, 2003[2], the grand jury indicted[3] Gonzalez in this case on one count of conspiracy to distribute methamphetamine and three counts of distribution of methamphetamine. (Doc. 21.) The conduct alleged in the conspiracy count spanned several years starting in 1997; the three distribution counts concerned specific methamphetamine deals dating to 2000 and 2001. (PSR ¶¶ 4–24.)

About a year after the start of the federal criminal case, on March 11, 2004, Defendant pleaded nolo contendere to state charges for assaulting a peace officer with a special allegation for committing that crime while out on bail and hit-and-run with property damage. (PSR ¶ 62.) On May 20, 2024, Gonzalez was sentenced in that assault/hit and run case to six years in prison; at the same time, Gonzalez was re-sentenced to three years on the 1999 drug transportation conviction. (*Id*.) The state court ordered the six-year assault/hit-and-run sentence to run concurrent with the three-year, re-imposed transportation sentence. (PSR ¶¶ 58, 62.)[4] The state court judge also indicated that Gonzalez's state sentences "would run concurrent to his Federal case." (Doc. 665-1, Ex. G (pages from the plea hearing in the assault/hit and run case and state

---

[1] This was not Gonzalez's first conviction. As the PSR reveals, he had a significant criminal history at the time of his federal sentencing. (PSR, ¶¶ 43–69.)

[2] Though the government filed the federal criminal complaint on March 31, 2003 (Doc. 1), and the Court issued a warrant for Gonzalez's arrest at that time, the warrant was returned unexecuted (Doc. 57). On May 22, 2003, the Court issued the first writ of habeas corpus ad prosequendum for Gonzalez for his appearance in federal court on this case. (Docs. 51, 57)

[3] In August 2003, the government filed a superceding indictment, though it appears the charges as to Gonzalez remained unchanged. (Doc. 97)

[4] According to the PSR, "[f]or reasons unknown, the defendant was never remanded in connection with the original sentence on the transportation matter." (PSR ¶ 60.) As a result, it appears that he did not begin to serve the transportation sentence until after the-resentencing in 2024.

1  sentencing transcript) at p. 82 of 116).)

2  On March 3, 2005, a federal jury found Gonzalez guilty on all counts. (Docs. 393, 396.)[5]
3  Because of his prior drug felony conviction, Gonzalez's mandatory minimum sentence was 240
4  months pursuant to 21 U.S.C. § 851. (Doc. 377.) The PSR found that Gonzalez was responsible
5  for selling 45.36 kilograms of a mixture containing methamphetamine, resulting in a base offense
6  level of 38. (PSR ¶¶ 31–32; *see also* Doc. 628 at 2.) The PSR recommended a three-level increase
7  for Defendant's aggravating supervisory role in the conspiracy, (PSR at ¶¶ 35-38), resulting in a
8  recommended adjusted offense level of 41, (*id*. ¶ 39). Gonzalez's criminal history computation
9  resulted in 14 criminal history points, with a criminal history category of VI. (Id. at ¶¶ 43-68.)
10 The resulting Guidelines range was 360 months to life. (Id. at 26; id. at ¶ 103.) The PSR
11 recommended a sentence of 360 months. (*Id*. ¶ 106.)

12 On June 21, 2005, the Court found that the quantity of methamphetamine involved in the
13 crimes resulted in a base offense level of 38, with a two-level increase for Gonzalez's supervisory
14 role in the conspiracy. The Court refused to apply any reduction for "acceptance of
15 responsibility," because Gonzalez "has not admitted anything and won't even admit his
16 identity . . ." (Doc. 676-1 at 438-439.) Thus, the Court determined the total offense level was 40
17 resulted and with the criminal history category of VI, the Court determined that the Guidelines
18 range was 360 months to life. *Id*.

19 In considering the sentence, the Court observed,
20 I don't think the criminal history is underrepresented. Mr. Gonzales - Rodriguez has a lot of issues that concern his disregard, quite frankly, for authority. He -- he runs from the police, he fights with the police, he - - there is a
21 case, he didn't get any points for it, but there's a matter involving a canine unit where it's reported that the defendant drove at a Highway Patrol Officer because --
22 the defendant said he did it because -he was in his way.
    And we have the assault on the peace officer, one of the felony convictions,
23 along with the prior drug felony. And we have a battery and possession of controlled substances and some traffic offenses, none of which count. But it's
24 really not a criminal history that it is possible to mitigate.

25 (Doc. 676-1 at 439-440) The Court concluded, "Mr. Gonzales-Rodriguez simply has no respect
26 for the law and no respect for the institutions of society." *Id*. at 441. Even still, the Court was

27
28 [5] Gonzalez was transported from state prison to this Court for his federal trial pursuant to a writ of habeas corpus ad prosequendum. (Doc. 233.)

3

concerned with imposing a sentence that would not create disparity with those already sentenced on the case. *Id*. at 440-441. The court recalled that the highest sentenced imposed on a codefendant was 262 months. *Id.* at 441. To "fashion a meaningful sentence," the court treated the case as if the total offense level was 35 and the criminal history was 6. *Id*. at 441. The Court varied downward and, in doing so stated,

> And at a level 35, he would have a 300 month sentence, I believe that's more than adequate punishment in this case. And maybe Mr. Gonzales-Rodriguez will learn something. Maybe he will have an adjustment in his attitude again. There isn't any way for us to know that, but he'll have enough time to give it a lot of thought.
> Therefore, to accomplish all the objectives of 3553, I am going to find that the appropriate guideline level, I'm going to come down from 40 to 35 in a criminal history category six, and I'm going to impose a 300-month sentence.

*Id*. at 442; Doc. 676-1 at 448.

Since being sentenced, Gonzalez has appealed and filed several motions for relief. (*See* Docs. 554, 617, 635, 642, 656; *see also Gonzalez v. Langford*, No. 2:17-cv-06217-R-MRW, 2017 WL 6271256 (C.D. Cal. Nov. 27, 2017).) Those efforts have been unsuccessful. Gonzalez is currently serving his sentence at USP Lompoc and is scheduled for release on March 27, 2027. Find an inmate, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited January 18, 2024).

### III.   DISCUSSION

**A.   Legal Framework**

In the pending motion Petitioner asks this Court to provide a "Statement of Non-Opposition" related to his pending request for retroactive designation to a state prison for service of his federal sentence. *See, e.g., Rodriguez v. Copenhaver*, 823 F.3d 1238, 1239–40 (9th Cir. 2016). Put another way, Petitioner seeks "to get credit toward his federal sentence for the time he spent in state custody before being transferred to the Bureau of Prisons." *Id*. at 1240. The Ninth Circuit has articulated the relevant legal framework as follows:

> The Bureau of Prisons' authority to *nunc pro tunc* designate a state prison for service of a federal sentence derives from its authority to designate the facility where a federal defendant serves his sentence. 18 U.S.C. § 3621(b); *Reynolds v. Thomas*, 603 F.3d 1144, 1150 (9th Cir. 2010), *abrogated on other grounds by etser v. United States*, [566 U.S. 231] (2012). Section 3621(b) gives the Bureau of Prisons discretion to designate the facility, but lists the factors that the Bureau of Prisons must consider when it exercises discretion. The statute directs the Bureau

4

of Prisons to consider "any statement *by the court that imposed the sentence*—(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate." 18 U.S.C. § 3621(b)(4) (emphasis added). This is a direction to the Bureau of Prisons to consider statements made by the sentencing judge to determine the judge's intent and reasoning for the particular sentence imposed on the particular defendant. . . *[S]ee also* Federal Bureau of Prisons Program Statement No. 5160.0[5], at 6 (Jan. 16, 2003) (setting forth procedures to follow "[w]hen the original sentencing judge is no longer available and the assigned judge offers no opinion").

(*Rodriguez*, 823 F.3d at 1242 (emphasis original).

**B.     Denial of Prior Request for Court Statement Re Nunc Pro Tunc Designation**

According to BOP Program Statement No. 5160.05, at 5–6, in the event an inmate makes a request for *nunc pro tunc* designation, an administrator may contact the inmate's sentencing court to determine whether it has objections to the request. The currently assigned judge will be contacted if the original sentencing judge is no longer available. *Id*. This Court's February 11, 2020, order declined to issue any statement of the Court's position on *nunc pro tunc* designation because no administrative request was before the Court at that time. (Doc. 641 at 5.)

Gonzalez argues that the Court should reach a different result now. (*See* Doc. 678.) First, Gonzalez concedes that as of February 11, 2020, he had not yet even filed an administrative request for *nunc pro tunc* designation with BOP. (*Id*. at 4.) In contrast, Gonzalez has now filed a formal request with BOP, dated March 9, 2023. (Doc. 676-1, Ex. A.) Whether this is a distinction that makes a difference is debatable. The Court has yet to receive any communication from BOP requesting its input on Gonzalez's request. One possible reason for the absence of this communication is that BOP has determined "concurrent designation is not appropriate." *See* Program Statement 5160.05 ¶ 9(4)(e) ("No letter [to the sentencing court] need be written if it is determined that a concurrent designation is not appropriate.)

Nonetheless, Gonzalez is also correct that courts have issued anticipatory statements on *nunc pro tunc* designations. *See United States v. Goddard*, No. 2:16-CR-00199-BLW, 2018 WL 1937338, at *2 (D. Idaho Apr. 24, 2018). The Court's February 11, 2020 order generally rejected the suggestion that this Court should give weight to state court's position on concurrency of the federal and state sentences:

5

Finally, the Court addresses Petitioner's assertion that "if this Court had been asked," "this Court would have ordered that the sentence in this case run concurrently with the anticipated sentence in that [state] case, thereby crediting Petitioner with the time he spent in State prison toward his federal time." (ECF No. 635 at 3.) Petitioner has raised this contention more than once, and the Court offers two observations in response. First, Petitioner's state sentence was imposed first in time and therefore was not an "anticipated sentence" at the time his federal sentence was imposed. Second, a state judge's amenability to a state sentence running concurrently with a yet-to-be rendered federal sentence does not impose any sentencing obligation on the federal court. As the district court opined when it denied Petitioner's previous § 2241 motion:

> What is the Court to make of the state judge's expressed intent that the state sentence run concurrent with the as-yet-unissued federal sentence? With respect, not much. Petitioner was obliged to serve the state court's six-year term whether he received an extensive sentence in the federal case or, as he undoubtedly hoped, was acquitted at his federal trial and received no sentence. The state judge clearly intended that Petitioner serve at least those six years in custody.
>
> But the scope of the federal sentence—and whether it was to run consecutive to the state term or not—is exclusively a matter of <u>federal</u> law without regard to the state judge's wishes. Section 3584(a) requires that multiple prison terms "imposed at different times run consecutively unless the court orders that the terms are to run concurrently." That's the <u>federal</u> court's order when rendering the <u>federal</u> sentence. In the "absence of an order to the contrary," the statute requires that "a federal sentence is to run consecutively to a prior state sentence." *United States v. Chea*, 231 F.3d 531, 535 (9th Cir. 2000); *Cox v. McGrew*, No. SA CV 12-666 CJC (JPR), 2013 WL 3811823 (C.D. Cal. 2013) (same).
> *Gonzalez*, No. 2:17-cv-06217-R-MRW, 2017 WL 6271256, at *2 (emphasis original).

(Doc. 641 at 5–6.)

Notwithstanding the above, this Court has not yet articulated its independent position on whether the federal sentence should be run concurrent to the state sentence(s) he was serving at the time he was transported to federal court for trial. Defendant urges the Court to concede that a concurrent sentence would be appropriate, arguing that the state drug transportation crime may be "related" to his federal convictions because they "involve the same type of drug, the federal conspiracy covers the time in which the state transportation of methamphetamine occurred in the same geographical area of California." (Doc. 676.) Assuming for the sake of argument that the two drug cases involve "related" (or at least "similar") conduct, Gonzalez does not discuss in his most recent round of briefs the significance of the fact that the relevant state prison term resulted

6

from two separate convictions, one of which (the assault/hit-and-run case) has no relation to his federal drug conviction.

This leaves the argument that the state court judge "promised" Gonzalez that his state time would be concurrent to the federal sentence. (Doc. 678 at 5.) Gonzalez has understandably been attempting to make this promise a reality for many years, without success. As Magistrate Judge Wilner explained, the state judge's preference was not and is not *binding* on the federal court or the BOP. *Gonzalez*, 2017 WL 6271256, at *2. Yet no party has identified, and the Court cannot locate, any authority *precluding* the Court from giving effect to such a promise as an exercise of its sentencing discretion. It remains unclear why the matter was not brought up at Gonzalez's federal sentencing. Gonzalez's 300-month federal sentence was substantial—far longer than those of his co-defendants—though they plead before trial. On the other hand, review of the transcript from the sentencing hearing indicates that the court would likely not have reduced the guideline range by 60 months, had he agreed to run the sentence "concurrent" to the state court sentence, which by that time, had been underway for a year. Clearly, the Court knew Gonzalez was serving a state sentence, because he was present in federal court on a writ. Rather, the Court seemed concerned about Mr. Gonzalez's past criminal conduct and what appeared to be his outright refusal to even attempt to conform his conduct to that which is required by law and society. (Doc. 676-1 at 439-441) Indeed, Gonzalez's criminal conduct, beginning when he was 16, seems to reflect a course that would have taken him to even more crime had he not been incarcerated on the federal charge. (Doc. 676-1 at 378-383, 386-393, 402-403) Before the federal case, he had already racked up three felony convictions related to drugs trafficking and a fourth felony conviction for attempting to run over a California Highway Patrol officer. (Doc. 676-1 at 402)

Fast forward to the present, he has now served 75% of that sentence and has suffered only one disciplinary incident for the past ten years. (Doc. 676 at 4–5 (Gonzalez characterizes it as a "minor" disciplinary incident in 2018, though, at that time, he was found to be in possession of a "hazardous substance," sanctioned with loss of credits, housed in disciplinary segregation, and lost commissary, telephone and visiting privileges. (Doc. 665-1 at 18).) According to the records Gonzalez provided previously, in the years before this 2018 conduct, he suffered discipline for

using "drugs/alcohol" in 2012, fighting in 2012, refusing to obey an order and displaying insolence in 2011, attempting to steal from food service in 2010, fighting in 2010, possessing a dangerous weapon in 2010, tattooing/self-mutilating in 2009, refusing to obey an order in 2008, interfering with staff in 2008 and "being unsanitary or untidy" in 2008. *Id*. at 18-21. He has availed himself of numerous educational opportunities throughout his time in federal custody. (*See* Doc. 665-1 at 8-10)

The Court can find no error in the sentence imposed by Judge Wanger. He was thoughtful in his analysis and, despite seeming to believe that the 360-month recommended sentence was supported, he exercised his discretion to vary downward significantly because he wanted to impose a sentence that was on parity with the codefendants and to allow Mr. Gonzalez a chance for redemption. Likewise, the Court can find no error in the BOP's apparent determination that it should not exercise its authority to nunc pro tunc designate the state prison for service of the federal sentence. Though Mr. Gonzalez has had disciplinary issues, this conduct occurred, for the most part, early in his confinement. (Doc. 665-1 at 18-21)

Largely, Mr. Gonzalez has done what has been required of him. He has been in continuous custody for nearly 20 years and will soon be 46 years old. The last ten years demonstrate that he has matured and decided that he and his family deserve more than the life he had been leading. Under these circumstances[6], though the Court does not affirmatively support the BOP exercising its discretion to *nunc pro tunc* designate a state prison for service of the federal sentence, likewise, it states no opposition to the BOP doing so either.

IT IS SO ORDERED.

Dated:   **January 19, 2024**

                                                          /s/ Jennifer L. Thurston
                                                          UNITED STATES DISTRICT JUDGE

---

[6] For purposes of this motion only, the Court assumes without deciding, that it has the authority to speak on this topic given the posture of this case.