UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GLAFIRO GONZALEZ,<br><br>　　　　Defendant. | Case No.: 1:03-cr-05165 JLT<br><br>ORDER DENYING DEFENDANT GLAFIRO GONZALEZ'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. 689) |

Pending before the Court is Glafiro Gonzalez's third motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 689.) The government opposes the motion, arguing that Defendant identifies no new information or case law that supports his request for a sentence reduction since the Court's prior denial orders. (Doc. 692 at 2.) Defendant has replied. (Doc. 693.) For the reasons set forth below, the motion is **DENIED**.

**I.     Background**

On March 3, 2005, a jury found Gonzalez guilty of conspiracy to distribute methamphetamine and three counts of distribution of methamphetamine. (Docs. 396, 400.) Because of a prior drug felony, Gonzalez's mandatory minimum sentence was 240 months pursuant to 21 U.S.C. § 851. (*See* Doc. 377.) The presentence investigation report found that Gonzalez was responsible for selling 45.36 kilograms of a mixture containing methamphetamine, resulting in a base offense level of 38. (PSR ¶¶ 31-32; *see also* Doc. 628 at 2.) The PSR recommended a three-level increase pursuant to U.S.S.G. §

3B1.1 for Gonzalez's aggravating supervisory role in the conspiracy, resulting in a recommended adjusted offense level of 41. (PSR ¶¶ 35-39.) Gonzalez's criminal history computation resulted in a criminal history score of 14, which included 11 criminal history points based on multiple prior convictions, 2 status points under the prior version of U.S.S.G. § 4A1.1(d), and 1 "recency" point under the 2004 version of § 4A1.1(e). (PSR ¶¶ 43-68.) This placed him in criminal history category VI. (PSR ¶ 68.) The resulting Guidelines range based on Gonzalez's offense level and criminal history category was 360 months to life. (PSR ¶ 93.)

At sentencing, the Court found that the quantity of methamphetamine involved in the crimes resulted in a base offense level of 38, with a two-level increase for Gonzalez's supervisory role in the conspiracy. (Doc. 665-1 at 101, 105.) The total offense level of 40 resulted in a Guidelines range of 360 months to life, but the Court departed downward after considering the sentencing factors under 18 U.S.C. § 3553 and imposed a sentence of 300 months in custody. (Doc. 434 at 3; Doc. 665-1 at 106-109.)

Gonzalez has filed two prior motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), both of which have been denied. (*See* Docs. 642, 654 656, 665, 672.) He is currently serving his sentence at Federal Correctional Institution Victorville (Medium II) with a projected release date of March 27, 2027. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited August 6, 2025).

## II.     Legal Standard

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018, a defendant, or the Director of the Bureau of Prisons on the defendant's behalf, may move for a sentence reduction in the district court. 18 U.S.C. § 3582(c)(1)(A). Upon such motion,

> district courts may reduce [a defendant's] term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies;

2

> (2) "extraordinary and compelling reasons" warrant a sentence reduction; (3) a sentence reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a)."

*United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022); *see also United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (if a court finds that extraordinary and compelling circumstances exist, it must then consider whether the § 3553 factors support a sentence reduction). The defendant bears the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

### III.   Analysis

#### A.   Administrative exhaustion

Section 3582(c) permits a defendant to apply to a federal district court for a sentence modification only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).[1]

Gonzalez claims he submitted his administrative request to the warden of his BOP facility, which was denied on November 25, 2024. (*See* Doc. 689 at 11; Doc. 689-1.) Because more than 30 days have passed since the denial, Gonzalez asserts he has exhausted his administrative remedies. (*See* Doc. 689 at 11.) The government does not contest that Gonzalez has met the exhaustion requirement under § 3582(c)(1)(A). Thus, the Court will address the merits of Gonzalez's motion.[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, to exhaust his administrative remedies, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies the defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, the defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] *See, e.g., United States v. Velasco*, 2024 WL 245638, at *2 (E.D. Cal. Jan. 23, 2024) ("Since Velasco's request has been denied, he has exhausted his administrative remedies and is permitted to file this motion."); *United States v. Portillo*, 2023 WL 5955999, at *1 (E.D. Cal. Sept. 13, 2023) (finding that because more than 30 days had elapsed since defendant filed his request to the warden for compassionate release, he satisfied the exhaustion requirement).

**B.     Extraordinary and compelling reasons**

The U.S. Sentencing Commission's policy statement outlines the circumstances under which "extraordinary and compelling reasons" exist to reduce a defendant's sentence, including the defendant's medical circumstances, age and other related factors, family circumstances, victimization, unusually long sentence, or "other reasons." U.S. Sent'g Guidelines Manual (U.S.S.G.) §§ 1B1.13(b)(1)-(6) (U.S. Sent'g Comm'n 2023). A defendant must show, and the Court must consider, "extraordinary and compelling reasons" according to the current version of § 1B1.13. *See United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. 2024), *reconsideration denied*, 2024 WL 2048643 (D. Or. May 6, 2024); *see also United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024).[3]

        1.     Unusually long sentence

Gonzalez argues, for a second time, that he should be granted compassionate release because he has served 10 years of an "unusually long sentence." (Doc. 689 at 15.) This "new" ground for relief, which was part of the November 2023 amendment to U.S.S.G. § 1B1.13, allows district courts to consider non-retroactive changes in sentencing law as an extraordinary and compelling reason to reduce a defendant's sentence in certain circumstances. *See* U.S.S.G. § 1B1.13(b)(6); Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254-01, 28258-59 (May 3, 2023).

        *a.     Gonzalez may not rely on arguments previously raised*

As an initial matter, Gonzalez apparently takes the position that because the amended § 1B1.13 had not yet taken effect when the Court issued its prior denial order, he may rehash an argument that the Court previously rejected. (*See* Doc. 689 at 14.) The Court is not persuaded.

---

[3] Prior to the November 2023 amendments, the Ninth Circuit held that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). However, the Ninth Circuit recently held that in 2023, "having regained a quorum, the Commission revised § 1B1.13 to govern motions by a defendant." *United States v. Bryant*, --- F.4th ----, U.S. Sent'g Guidelines Manual § 2D1.1(c) (U.S. Sent'g Comm'n 2021)., at *2 (9th Cir. July 21, 2025) (citing Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,256 (May 3, 2023)). "Now, courts are 'bound by' § 1B1.13 in deciding all compassionate release motions under § 3582(c)(1)(A)." *Id.* (citing *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *Concepcion v. United States*, 597 U.S. 481, 495 (2022)). The Court clarified that "*Aruda* has therefore been superseded to the extent that it sets out a different rule for motions filed by defendants after the effective date of the 2023 revisions to § 1B1.13." *Id.*, at *2 n.1.

In his second motion for compassionate release, Gonzalez argued that changes in sentencing law under the First Step Act of 2018, including a lower applicable mandatory minimum sentence, created an extraordinary and compelling disparity between the sentence he received and the one he would receive today. (Doc. 665 at 6, 15-16.) Though § 1B1.13(b)(6) had not yet been enacted at the time that motion was denied, the Court acknowledged that "[t]he Ninth Circuit has recently confirmed that the Court may consider non-retroactive changes to sentencing law, such as the FSA, in evaluating compassionate release motions." (Doc. 672 at 5, citing *United States v. Chen*, 38 F.4th 1092, 1099 (9th Cir. 2022).) Gonzalez recognizes this. (*See* Doc. 689 at 12.) In so holding, the Ninth Circuit in *Chen* recognized a circuit split on the issue, but ultimately "join[ed] the First, Fourth, and Tenth circuits in concluding that district courts may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)." *Chen*, 48 F.4th at 1098. The Court reasoned:

> Legislative history reveals that Congress originally contemplated "extraordinary and compelling reasons" to potentially include "unusually long sentence[s]" or cases where "the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment. S. Rep. No. 98-225, 55-56 (1983). Though Congress did not end up expressly permitting the consideration of unusually long sentences or changes in sentencing law, it also did not expressly prohibit it.

*Id.* at 1099.

In its commentary to the 2023 amendment to § 1B1.13, the Sentencing Commission recognized the circuit split, and thus, the practice amongst district courts of considering non-retroactive changes in sentencing law as extraordinary and compelling reasons. It explained that "[s]ubsections (b)(6) and (c)[4] operate together to respond to a circuit split concerning when, if ever,

---

[4] Subsection (c), titled "Limitation on Changes in Law," provides the following:

> Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

5

non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." 88 Fed. Reg. at 28258. Ultimately, the Commission reached a solution:

> The amendment agrees with the circuits that authorize a district court to consider nonretroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle in multiple ways. First, it permits the consideration of such changes only in cases involving "unusually long sentences[.] … Second, the change in law itself may be considered an extraordinary and compelling reason only where it would produce a gross disparity between the length of the sentence being served and the sentence likely to be imposed at the time the motion is filed. Finally, … the amendment limits the application of this provision to individuals who have served at least 10 years of the sentence the motion seeks to reduce.

88 Fed. Reg. at 28258-59.

Therefore, notwithstanding the fact that an explicit subsection now provides for it, the Court properly considered non-retroactive changes to sentencing law when deciding whether extraordinary and compelling reasons existed to grant Gonzalez's previous motion for compassionate release in 2022. *Chen*, 48 F.4th at 1098-99. The Court need not consider this argument a second time.[5]

### b.   Gonzalez fails to demonstrate a sentencing disparity

In any event, the Court will not consider whether a change in the law presents an extraordinary and compelling reason for compassionate release in this case, as such consideration is only permitted

---

U.S.S.G. § 1B1.13(c). The Sentencing Commission's commentary stated that subsection (c) was added to its policy statement "[t]o more fully address the proper role of changes in law in this context":

> Whereas subsection (b)(6) narrowly limits the circumstances in which a non-retroactive change in the law can constitute an extraordinary and compelling reason that itself can warrant a reduction in sentence, subsection (c) of the amended policy statement governs the use of changes in the law in cases where a defendant "otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction." In those circumstances, all changes in law, including non-retroactive amendments to the Guidelines Manual, may properly be considered in determining the extent of a sentencing reduction.

88 Fed. Reg. at 28259.

[5] Likewise, to the extent Gonzalez's motion can be construed as one for reconsideration of the Court's prior order, it is **DENIED**. *See United States v. Davis*, 2021 WL 1122574, at *2 (E.D. Cal. Mar. 24, 2021), *aff'd*, 2022 WL 1090945 (9th Cir. Apr. 12, 2022) ("[A]s is true of motions for reconsideration in civil cases, motions for reconsideration in criminal cases are almost always denied when they rest on arguments or evidence the moving party previously raised or could have raised and denial would not cause manifest injustice.").

6

"where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). As the Court previously explained, "Gonzalez's Guidelines range was—and remains—far above the mandatory minimum of which he complains. As stated previously, the sentencing court departed downward significantly to sentence Gonzalez to five years *fewer* than the Guidelines initially suggested. And even with this reduction, Gonzalez's sentence amounts to five years *more* than the mandatory minimum applicable to his conduct at the time of sentencing." (Doc. 672 at 5-6, emphasis in original.)

The same holds true today. A mandatory minimum sentence—at *any* length—does not change Gonzalez's Guidelines sentencing range. In fact, Gonzalez concedes that even if he had not received a recency point and had only received one status point—which would result in a criminal history score of 12 and place him in criminal history category V—his Guidelines sentencing range would remain the same. (Doc. 689 at 16.) Indeed, at Gonzalez's offense level of 40, only a criminal history score of 3 would reduce his Guidelines sentencing range; and even then, it would be 324 to 405 months, which is more than the 300-month sentence he received. *See* U.S.S.G. Ch. 5 Pt. A.

Gonzalez attempts to take a second bite at the apple by suggesting that his sentence was largely based on a 20-year mandatory minimum, rather than on the Guidelines and § 3553 sentencing factors. (*See* Doc. 689 at 16-17.) The Court previously rejected this argument. (*See* Doc. 672 at 6 ["It is insufficient for Gonzalez to speculate that the mandatory minimum applicable in 2005 was a 'significant factor' in his ultimate sentence while ignoring the other significant factors contributing to his lengthy sentence, including: his *other* prior convictions, his role in the conspiracy, and the amount of methamphetamine at issue in this case."].)[6] Indeed, "compassionate release is not sentencing or resentencing." *Bryant*, 2025 WL 2026172, at *6. "Using the compassionate release statute to second-guess a sentencing determination years later endorses 'an endless repetition of inquiry' into sentences that have already been through the wringer of judicial review." *Id.* (quoting *McCleskey v. Zant*, 499

---

[6] At sentencing, the Court explained: "We know in this case we have a mandatory 240-month minimum and under the 3553 factors, we are to sentence, in addition to the guidelines, based on the nature and circumstances of the offense, the history and characteristics of the defendant, reflecting the seriousness of the offense, promoting respect for law, just punishment, adequate deterrence, to protect the public from future crimes of the defendant, to provide the defendant with needed education or vocation, medical care or other correctional treatment." (Doc. 665-1 at 108:4-13.)

U.S. 467, 492 (1991)).

Therefore, though Gonzalez argues that the FSA created a sentencing disparity in his case, he still "has not actually presented facts suggesting that his Guidelines or ultimate sentence would or should be different if he were resentenced under the FSA's changes." (Doc. 672 at 6.)[7] Because he has not demonstrated a "gross disparity" required by § 1B1.13(b)(6), the Court's inquiry ends here.

### 2. Other reasons

As a new ground for relief, Gonzalez asserts that the BOP's failure to credit a portion of his state sentence already served to his federal sentence is an extraordinary and compelling reason justifying compassionate release. (Doc. 689 at 13-14; *see also id*. at 15 n.4.) He seeks relief under the catch-all provision, "Other Reasons," which states that extraordinary and compelling reasons may exist if a defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).[8]

As a brief background, prior to these federal proceedings, Gonzalez served 3-to-6 years on a 1999 California state conviction for transporting methamphetamine. He claimed that his state court sentencing judge assured him that his state sentence would run concurrent to any federal sentence, as the offenses involved the same time and same type of drug. When Gonzalez was sentenced in this

---

[7] Defendant also challenges this holding by offering data from the U.S. Sentencing Commission's Judiciary Sentencing INformation (JSIN) database, which, according to Defendant, "confirms that [he] would receive a significantly shorter sentence today." (*See* Doc. 689 at 18-20.) He claims this data reveals that "between 2019 and 2023, there were fourteen defendants whose primary guideline was §2D1.1and Methamphetamine (actual) was the primary drug type, with a Final Offense Level of 40 and a Criminal History Category of V, after excluding defendants who received a § 5K1.1 substantial assistance departure. The average sentence imposed on those defendants was 271 months and the median sentence was 245 months." (*Id.*) The Court cannot confirm the accuracy of this cited information, as the JSIN database has since been updated to reflect that between 2020 and 2024, 9 defendants were sentenced according to the § 2D1.1 primary guideline for methamphetamine-related drug offenses, with an offense level of 40 and criminal history category of V, and received an average sentence of 298 months of imprisonment and *a median length of 300 months*. *See* Judiciary Sentencing INformation (JSIN), U.S. SENT'G COMM'N, https://jsin.ussc.gov/ (last visited August 6, 2025). Nonetheless, these statistics do not serve as confirmation that Defendant would have received a lesser sentence. More importantly, this information is immaterial to the Court's analysis under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.

[8] Paragraphs 1 through 4 outline extraordinary and compelling reasons based on a defendant's medical circumstances, age, family circumstances, and status as a victim of abuse while in custody. *See* U.S.S.G. §§ 1B1.13(b)(1)-(4).

8

case, the sentencing judge did not state whether Gonzalez's state sentence should run concurrent to his federal sentence, and thus, they ran consecutively. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").

On March 9, 2023, Gonzalez filed an administrative petition with the BOP pursuant to 18 U.S.C. § 3621(b) and BOP Program Statement 5160.05, requesting that the BOP retroactively designate California state prison as a place to serve his current federal sentence, thereby crediting his time served in state custody prior to being federally prosecuted. (Doc. 676-1, Ex. A.) Gonzalez also filed a motion in this case, asking the Court to issue a "statement of non-opposition" to his administrative petition. (Doc. 676.) After assuming, without deciding, that it had authority to speak on the topic given the posture of the case, the Court issued an order concluding: "[T]hough the Court does not affirmatively support the defendant's request that the BOP exercise its authority to *nunc pro tunc* designate a state prison for service of the federal sentence, it offers no opposition to the BOP doing so either." (Doc. 681 at 8 & n.6.)

Now, given the Court's non-opposition and the BOP's subsequent refusal to act, Gonzalez claims that the Court "can do so in its stead by granting Mr. Gonzalez compassionate release." (Doc. 689 at 14.) There is simply no legal basis upon which such an assertion can stand; the Court does not have "the power to remedy this unfair result by releasing Mr. Gonzalez now rather than require him to serve out the remaining two years of his sentence." (*Id*.)

18 U.S.C. § 3621 provides that the BOP "shall designate the place of the prisoner's imprisonment, and … may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—"

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence—
>     (A) concerning the purposes for which the sentence to imprisonment
>         was determined to be warranted; or

      (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Furthermore, the BOP's designation of an inmate's place of confinement "is not reviewable by any court." *Id.*

  Importantly, when Gonzalez requested a statement of non-opposition from the Court, he noted that the BOP has authority to "designate the place of Gonzalez's confinement to serve the sentence this Court imposed," and that § 3621(b) "lists a variety of factors the BOP may consider in making the designation, including the view of the sentencing court." (Doc. 676 at 5; *see also id*. at 3 ["The assigned judge's view is a factor the Bureau of Prisons would consider in deciding whether to grant Gonzalez's request."].) Therefore, the Court rejects the notion that it may exercise its discretion under 18 U.S.C. § 3582(c) to compensate for the jurisdiction it lacks to review a designation by the BOP.

  Moreover, while unfortunate that this issue was not discussed at Gonzalez's federal sentencing, and perhaps even "unfair," the Court is hard-pressed to find that any oversight by the sentencing judge—which went uncorrected for more than 20 years—now presents extraordinary and compelling reasons warranting compassionate release. As such, his motion must be denied.

  **C.**  **Consistency with the § 3553 sentencing factors**

  Having concluded that Gonzalez's motion is not supported by extraordinary and compelling reasons, the Court need not reach the sentencing factors set forth at 18 U.S.C. § 3553(a). *See Keller*, 2 F.4th at 1284 ("[A]lthough a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step"); *see also Wright*, 46 F.4th at 945.

///
///
///
///
///
///

## IV. Conclusion

In sum, Gonzalez has failed to meet his burden of demonstrating that his circumstances present extraordinary and compelling reasons warranting compassionate release. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. §§ 1B1.13(b)(5), (6). Accordingly, his motion, (Doc. 689), is **DENIED**.

IT IS SO ORDERED.

Dated: __August 8, 2025__

UNITED STATES DISTRICT JUDGE